## Freetly *versus* Barnhart.

51 279
152 533
51 279
31 SC ¹ 93

1. Specific performance is not a matter of course, but rests in the sound discretion of the chancellor; it may be refused, notwithstanding a contract obligation, if there be circumstances rendering it inequitable.

2. It would be against good conscience to force a title not marketable on a purchaser, although his contract may seem to contemplate it.

3. The loss of a lease, an interest in which was contracted to be conveyed, would of itself justify a refusal to decree specific execution.

4. Where there was a contract to convey interests in several leases, a defect in any one of them would defeat the right to specific performance as against the party to whom the conveyance was to be made; he was entitled to all or none.

APPEAL from the Court of Common Pleas of *Westmoreland county*, by Jacob Freetly, who was complainant against Henry Barnhart, respondent.

The bill sets out that by an agreement of July 6th 1864, Barnhart sold to Freetly one undivided eighth part of eight acres of land in Venango county, Pennsylvania, and agreed to give Freetly a deed in fee clear of all encumbrances therefor. That, in consideration whereof, Freetly gave in exchange to Barnhart one-half of his title of three leases of land in West Virginia, made to Thomas Cunningham & Co., Barnhart binding himself to be subject to all the conditions, and have all the rights and privileges contained in the leases; that Barnhart further agreed to become a partner in the Cunningham Oil Company, and was thereby constituted a partner, to bear a proportion according to his interest in all losses, &c., connected with the business of the company, and to receive a like share of profits, &c., and if a lawsuit should arise from defect of any of said leases, or violation of their terms by the Cunningham Oil Company, heretofore made, Freetly bound himself to defend the suit at his own costs. That the complainant had always been ready and willing to perform his part of the agreement; and had executed a deed of conveyance and constitution of membership, and delivered it to Barnhart according to the agreement, which Barnhart accepted; and that complainant had done whatever it was his duty by the agreement to do, and charging that Barnhart has refused to comply with his part of the agreement.

Barnhart by his answer admitted the agreement, but alleged that when he went to West Virginia to look after the leases, he found they had been misrepresented by the complainant; that the most valuable, if not all, had been defective or void at the beginning, or had been forfeited; that a lease of the Duland Farm was void in consequence of part of the property belonging to a lunatic; that the Nelson Farm, one of those leased, was owned by another company; and that the Hull Farm, another of those leased, was claimed and occupied by another party. That the deed from

[Freetly *v.* Barnhart.]

Freetly was not in accordance with the agreement; not in proper form, giving no description of the land, having neither acknowledgment nor a proper stamp—nor a covenant to defend the title according to the agreement.

The complainant replied that the allegations of his bill were true.

The conveyance from Freetly to Barnhart was as was alleged in the answer, and there was evidence tending to show the invalidity of the leases to the Cunningham Oil Company, that they had been forfeited, and also the small value of the shares.

The court below refused to decree the execution of a conveyance, and directed the defendant to reconvey the property in the leases, and on his doing so decreed that the bill be dismissed. This decree was assigned for error.

*R. B. Patterson* and *Golden & Neale*, for appellant.—No damages can compensate a vendee for failure to get the land: 1 Grant 83. The court will not hold a complainant to perform a stipulation before the occasion has arisen and he offers to perform when called on: Larison *v.* Burt, 4 W. & S. 28. Where complainant cannot be remitted to his former position, specific performance will be granted: 3 W. & S. 62; Brown *v.* Mets, 5 Watts 164; 2 Casey 51; 2 Barr 122; 1 Pars. 37.

The court had nothing to do with the defects of title to respondent; he received it and holds it. The conveyance by Freetly was performance. There was no deception; in stronger cases, performance has been decreed: 6 Paige 254. Cases where execution has been refused, have been where there was a covenant for "undoubted title," or something equivalent: 9 Harris 50; 11 Casey 381; 2 Barr 34; 5 W. & S. 311. Specific performance is matter of discretion exercised judicially according to established rules: Dalzell *v.* Crawford, 1 Pars. 37.

There was nothing further to be done to invest Barnhart with Freetly's title; it had been fully conveyed. Barnhart relied on Freetly's personal responsibility to defend any suits: Borts *v.* Borts, Legal Intel. September 29th 1865; being executed on part of Freetly, Barnhart should be compelled to execute his part.

No defence but that alleged in the answer will be considered: Brightly's Eq. § 723. The allegation in the answer that the leases were misrepresented is not responsive, and the burden of proof is therefore on respondent: Pusey *v.* Wright, 7 Casey 394–5; Adams' Eq. 21; 9 Harris 251; 1 Id. 143. An irresponsive answer is no evidence for defendant: Brightly's Eq. § 720, 721; Adams' Eq. 136, 137, 744–747. But complainant may use it against defendant: Brightly's Eq. 717; Adams' Eq. 744–5; Greenleaf's Eq. § 281. Freetly being called as witness by Barnhart, his testimony must stand unless rebutted by two

[Freetly *v.* Barnhart.]

witnesses: Adams' Eq. 21; Eberley *v.* Graff, 9 Harris 251; Commonwealth *v.* Cullen, 1 Harris 143; Pusey *v.* Wright, 7 Casey 395.

*Cowan* and *Fulton*, for appellee.

The opinion of the court was delivered, January 18th 1866, by

THOMPSON, J.—There is nothing better settled than that a decree for specific performance is not a matter of course, but rests in the sound discretion of the chancellor. It may be refused, therefore, notwithstanding a contract obligation, if there be circumstances rendering it inequitable, and then the party seeking it is left to his action at law for damages. I know of no case in which specific performance is ever decreed, unless it appears to accord with good conscience that it should be so decreed, be the contract ever so specific in its terms. It is not with abstract and rigid law that equity deals, but with principles of justice and right, which the consciences of men must approve and may be appealed to, to perform. Hence we have refused to decree the specific performance of contracts for the sale of land, unless the vendor can give a marketable title: Nicol *v.* Carr, 11 Casey 381. It would be against good conscience to force any other title on a purchaser, although his contract may seem to contemplate it. Equity will not compel it, although at law damages may be recoverable for non-performance. Baron Eyre said in Gale *v.* Gale, 2 Cox 145, that there was "no such thing as a doubtful title in a court of equity; it must be either right or wrong, and the thickness of the medium through which the point is seen makes no difference in the end." So, where the property is indescriptive and uncertain as to location and extent, performance will not be decreed: Hammer *v.* McEldowney, 10 Wright 334.

Every principle above referred to unites in denying the decree sought here. Badly, very badly, as the facts are presented, it still plainly enough appears that the title offered by the complainants was not only not marketable, but scarcely to be regarded as title to anything. The lease of the Duland tract was clearly defective to the extent of one-third, the party entitled to that being *non compos mentis* when it was made, if any lease was in fact ever made, for the complainant admits that it is lost. This, of itself, would justify a refusal to decree in such a case as this. The Nelson tract is claimed by other parties, it seems, the parties under whom the complainant claims title having forfeited it by failing to improve according to its terms. Such seems also to have been the condition of the Hall lease. A defect in any one of these leases would defeat the right to specific performance as against the defendant. He was entitled to all or none. The

[*Freetly v.* Barnhart.]

whole thing seems to have been a speculative affair, worth little
or nothing. A share·equal to the complainant's, it was proved,
was offered for $100, and one, perhaps the same, sold afterwards
for $200.

Poor as was the plaintiff's show of title, which was to draw
after it the tangible and valuable property of the defendant, it
was not even conveyed with the covenants promised in the origi-
nal contract. The conveyance seems to have been thrust into the
defendant's hands when he was about to go and look after the
property it purported to describe ; but, even before he· left with
this purpose, and on the same day he received it, he objected
that it did not contain the promised covenants to defend the title.
As he was going West to look after the property, he took the
instrument thus furnished him along, in order to enable him to
discover the property and see if it was properly described. His
visit seems to have satisfied him on one point at least—that he
would not execute his part of the contract. Under the· circum-
stances, the court below did right in refusing to compel him to do
it. If the complainant has suffered damages; he can go into a
court of law and recover them ; that is his only resort in this
case.

> The decree of the court dismissing the bill was right,
> and is affirmed, at the costs of the complainant.